IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SAMANTHA FURGASON,

        Plaintiff,

vs.                                        No. CIV 02-906 LFG/LAM

OFFICER DANNY VALDEZ, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER ON DEFENDANT DANNY VALDEZ'S MOTION FOR PARTIAL SUMMARY JUDGMENT NO. I

THIS MATTER comes before the Court on Defendant Danny Valdez's ("Valdez") Motion for Partial Summary Judgment No. I Which Seeks the Dismissal of Plaintiff's Eighth, Ninth and Tenth Amendment Claims and State Law Tort Claims [Doc. 49], filed herein on July 10, 2003. Plaintiff filed a "Combined Response" [Doc. 55] to this motion and to another of Valdez's motions for partial summary judgment,[1] and Valdez filed his Reply [Doc. 58]. Oral argument is not necessary. For the reasons given below, the motion is denied as moot insofar as it seeks dismissal of Plaintiff's claims under the Eighth, Ninth and Tenth Amendments, and the motion is granted with regard to Plaintiff's claims under state tort law.

---

[1] The practice of filing a combined response to two separate summary judgment motions is not proper. *See*, Administrative Order Misc. 92-88 (May 4, 1992). On the other hand, the Court questions why Defendant Valdez filed two separate summary judgment motions when the issues raised in the two motions are intertwined. If the purpose was to avoid the page limitation on motions, D.N.M.LR-Civ. 7.7, then this practice is improper. The Court will consider Plaintiff's submissions on this occasion, but Plaintiff is put on notice that in the future, separate responses should be filed to separate motions. So, too, Defendant is advised that separate motions for related issues should not be filed.

**Factual and Procedural Background**

Plaintiff Samantha Furgason ("Furgason") filed a complaint in state court against Valdez, based on actions he allegedly took while employed as a police officer with the City of Santa Fe. Furgason claims that in February 2000, Valdez observed her as she was using an urban walking trail in Santa Fe and began stalking her. She alleges that he obtained personal information about her by calling the police dispatcher and having her vehicle registration examined. Valdez admits that, after seeing Furgason on the trail, he called the police dispatcher and traced Furgason's vehicle registration in order to find out who she was.

On February 24, 2000, Valdez placed a note on Furgason's car. The note read, "On Monday, right here, I saw you with your sweat pants down & you were adjusting your black panties. I can't stop thinking of you. You do have a beautiful body & keep up the good work." [Doc. 55, Ex. 6]. Valdez admits putting this note on Furgason's car. Furgason says that, upon reading the note, she looked around the area and noticed a car parked across the street from her. She was sufficiently alarmed that she called the police and reported the incident.

Furgason further alleges that, on February 24, 2000, after she reported the note-placing incident, she began receiving a series of phone calls, "blocked" so that she could not tell who was calling. The caller hung up each time without speaking. Valdez denies that he placed calls or did any actions that could be characterized as stalking.

Furgason asserts that, on February 28, 2000, two of her friends parked her car at the walking trail and saw Valdez "cruise" her vehicle twice. She says the friends followed Valdez, who turned on his flashing light and ran a red light in order to evade them, and that when Furgason's friends gave a description of the vehicle and its plates to the Santa Fe Police Department, the information matched

Danny Valdez. Valdez denies running a red light but does admit that he drove by Furgason's car twice.

Furgason alleges that she received another series of hang-up calls, and that on March 1, 2000, Valdez followed her in his vehicle as she drove in town on an errand to her bank. She testified in her deposition that the Valdez was driving a gold pickup truck at the time, and that he aggressively tailgated her car and followed her home, driving into the alley that led to her house and then parking in a lot nearby. [Doc. 55, Ex. 5, at 116-119]. Valdez denies these stalking allegations. Furgason alleges that she was told by the State Police that in the event of an emergency involving the stalker she was not to call 911, which would presumably connect her to the city police, but rather to contact State officials because "they weren't sure who they could trust." [Doc. 55, Ex. 5, at 169].

The case was removed to federal court by defendants. Valdez answered the complaint and thereafter filed two motions for summary judgment. The current motion (Motion for Summary Judgment No. I) concerns Furgason's claims of constitutional violations under the Eighth, Ninth and Tenth Amendments, and her causes of action under state tort law. A companion motion (Motion for Summary Judgment No. II) [Doc. 50] is based on Furgason's claims under the Fourteenth Amendment. A Memorandum Opinion and Order on Valdez's Motion for Summary Judgment No. II is also filed on this date.

## Standards for Summary Judgment and Qualified Immunity

A summary judgment proceeding is appropriately used to cut through the allegations of the pleadings and determine if there is a triable issue. Summary judgment will be granted when the moving party can demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress

& Co., 398 U.S. 144, 90 S. Ct. 1598 (1970); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995). The court does not decide the issues of fact, but rather determines if there is an issue that must be resolved at trial. In considering a motion for summary judgment, the Court examines the factual record and the reasonable inferences therefrom in the light most favorable to the party opposing the motion. Foster v. Alliedsignal, Inc., 293 F.3d 1187 (10th Cir. 2002).

When a summary judgment motion raises the defense of qualified immunity, "the plaintiff must show that the law was clearly established when the alleged violation occurred and come forward with facts or allegations sufficient to show that the official violated the clearly established law. Then the defendant assumes the normal summary judgment burden of establishing that no material facts that would defeat his claim for qualified immunity remain in dispute." Woodward v. City of Worland, 977 F.2d 1392, 1396-97 (10th Cir. 1992).

> Qualified immunity shields government officials from the burdens of lawsuits stemming from the exercise of discretionary authority, yet it also allows for the vindication of constitutional rights ... In striking a balance between these two competing goals, the Supreme Court has formulated a test based on the "objective reasonableness" of the conduct at issue as compared with the state of the law at the time of the alleged violation ... Under this test, the burdens of a trial and personal liability may not be imposed on a government official for the exercise of discretionary authority unless his conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."

Jantz v. Muci, 976 F. 2d 623, 627 (10th Cir. 1992).

The official's unlawfulness must be "apparent in light of the preexisting law," but the particular action in question need not previously have been held unlawful. Eastwood v. Dept. of Corrections, 846 F.2d 627, 630 (10th Cir. 1988). "Instead, we merely require the parties to make

4

a reasonable application of existing law to their own circumstances." Johnson v. Martin, 195 F.3d 1208, 1216 (10th Cir. 1999). To prevail on summary judgment once a defendant raises this defense, plaintiff must demonstrate some correspondence between the defendant's conduct and prior law allegedly establishing that the defendant' actions were clearly prohibited. Jantz, at 627.

### Discussion

Valdez seeks dismissal of Furgason's claims under the Eighth, Ninth and Tenth Amendments to the U.S. Constitution, as well as her tort claims under state law.

#### A. Claims Under the Eighth, Ninth and Tenth Amendments

Plaintiff has withdrawn her claims under the Eighth, Ninth and Tenth Amendments. *See*, Plaintiff's Combined Response [Doc. 55], at 12 (Ninth and Tenth Amendments), and at 21 (Eighth Amendment). She asks the Court instead to consider her constitutional claims as arising under the Fourteenth Amendment, and the Court has done so in a separate Memorandum Opinion and Order filed this date in connection with Valdez's Motion for Summary Judgment No. II.

The Court therefore denies as moot Defendant's motion for summary judgment as it relates to Plaintiff's claims under the Eighth, Ninth and Tenth Amendments, since Plaintiff has voluntarily withdrawn those claims. The Court therefore need not consider Defendant's qualified immunity arguments.

#### B. Claims Under State Tort Law

Valdez also seeks dismissal of Furgason's claims under state tort law. In her complaint, Furgason alleges that Valdez's actions "constituted the independent torts of stalking, sexual harassment, outrage, and prima facie tort under the laws of the state of New Mexico." [Complaint, Ex. A to Doc. 1, at ¶ 26]. Furgason has voluntarily consented to dismissal of her prima facie tort

5

claim, *see* Plaintiff's Combined Response [Doc. 55], at 4 n.2; but she continues to press her claims against Valdez for stalking, sexual harassment, and outrage.

Valdez concedes that he was a public employee acting within the course of his employment with the City of Santa Fe when the relevant actions are alleged to have occurred. By statute, public employees in New Mexico are protected from liability for their acts under the principles of sovereign immunity, and the Court agrees with Defendant that no exceptions to sovereign immunity are applicable in this case.

In 1975, the New Mexico Supreme Court abolished the common law doctrine of sovereign immunity. Hicks v. State, 88 N.M. 588, 544 P. 2d 1153 (1975). The state legislature subsequently responded by enacting the New Mexico Tort Claims Act, NMSA 1978 § 41-4-1 et seq. The Tort Claims Act states that, "A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by . . . Sections 41-4-5 through 41-4-12." NMSA 1978 § 41-4-4. The Tort claims Act sought to balance the unfairness of sovereign immunity with the protection of the public treasury. It allowed plaintiffs to sue the government and recover damages but only in limited instances for specific misconduct.

With the adoption of the Tort Claims Act, New Mexico legislature declared it to be the states's public policy that governmental entities and public employees shall be liable solely within the limitations of the Tort Claims Act, NMSA 1978 § 41-4-2, and announced that governmental entities and public employees, while acting within the scope of their duties, shall be immune from liability from any tort except as waived by the Act. NMSA 1978 § 41-4-4. Tompkins v. Carlsbad Irrigation District, 96 N.M. 368, 630 P.2d 767 (Ct. App. 1981). The Act reinstated governmental immunity except in eight specific classes of activities, Firemens Fund Insurance Company v. Tucker, 95 N.M.

56, 618 P.2d 894 (Ct. App. 1980), one of which deals with particular actions taken by law enforcement officers. NMSA 1978 § 41-4-12.

In construing the Tort Claims Act, New Mexico's appellate courts hold that a cause of action does not exist unless immunity for that cause of action has specifically been waived in the statute. In <u>Begay v. State</u>, 104 N.M. 483, 486, 723 P. 2d 252, 255 (Ct. App. 1985), *rev'd on other grounds*, <u>Smialek v. Begay</u>, 104 N.M. 375, 721 P.2d 1306 (1986), the court stated:

> The public policy declaration of Section 41-4-2, and the immunities proviso of Section 41-4-4, taken together, require that plaintiffs' cause of action must fit within one of the exceptions to the immunity granted to governmental entities and public employees. If immunity has been waived, the particular agency that caused the harm may be held liable for the negligent act or omission of the public employee.

Thus, under the New Mexico Tort Claims Act, when a public employee is sued, the Court must first determine whether immunity has been waived for the specific claims alleged. <u>Redding v. City of Truth or Consequences</u>, 102 N.M. 226, 693 P.2d 594 (Ct. App. 1984). If immunity for the tort asserted has not been specifically waived, the tort may not be asserted. <u>Begay v. State</u>, *supra*. Because a plaintiff's right to recover is limited to the conditions prescribed in the Act, if the specific tort is not found in the Tort Claims Act, the cause of action may not proceed. <u>Methola v. Eddy County</u>, 95 N.M. 329, 622 P.2d 234 (1980); <u>Blea v. City of Espanola</u>, 117 N.M. 217, 870 P. 2d 755 (Ct. App. 1994).

> 1. <u>Cause of Action for Outrage or Intentional Infliction of Emotional Distress</u>

One of the claims asserted against Valdez in Plaintiff's complaint is for the tort of "outrage." Under New Mexico law, the tort of "outrage" is the same as "intentional infliction of emotional distress." <u>Dominguez v. Stone</u>, 97 N.M. 211, 214, 638 P.2d 423 (Ct. App. 1981). The tort of

"outrage," or intentional infliction of emotional distress, is not one of the enumerated torts which provides an exception to sovereign immunity for law enforcement officers under NMSA 1978 § 41-4-12. That section provides:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

The New Mexico legislature could have included intentional infliction of emotional distress within the torts enumerated in § 41-4-12, if it had intended that police officers should be liable for such torts. This tort was recognized in New Mexico as of 1972, several years before enactment of the Tort Claims Act in 1976. Dominguez v. Stone, *supra*. The legislature chose not to include it, however, and this omission indicates that this cause of action was not intended to be included as one for which immunity is waived. *See*, McCurry v. City of Farmington, 97 N.M. 728, 731-32, 643 P.2d 292, 295-96 (Ct. App. 1982).

*See also*, Romero v. Otero, 678 F. Supp. 1535, 1540 (D.N.M 1987), in which the court held, "Defendants are correct that the [New Mexico] Tort Claims Act does not waive the immunity of law enforcement officers for this cause of action [*i.e.,* intentional infliction of emotional distress] standing alone as a common law tort" (although emotional distress is still recoverable as an element of damages). The New Mexico courts have not ruled on this precise issue, although the federal court's holding in Romero v. Otero, was cited with approval by the New Mexico Supreme Court in Weinstein v. City of Santa Fe, 121 N.M. 646, 654, 916 P.2d 1313, 1321 (1996).

The Court finds that sovereign immunity has not been waived, and therefore grants Valdez's motion insofar as it seeks dismissal of Furgason's claim under the Tort Claims Act for intentional infliction of emotional distress.

### 2. Causes of Action for Stalking and Harassment

As was true with the tort of outrage, neither "stalking" nor "sexual harassment" is included in the list of actions for which immunity of police officers is waived under § 41-4-12. In addition, the New Mexico Court of Appeals held specifically that the Tort Claims Act does not waive immunity for a claim of sexual harassment. Ramer v. Place-Gallegos, 118 N.M. 363, 881 P.2d 723 (Ct. App. 1994), *overruled on other grounds,* Spectron Dev. Lab. v. American Hollow Boring Co., 123 N.M. 170, 936 P.2d 852 (1997).

Plaintiff, however, argues that her claims for stalking and harassment fall within the catch-all portion of § 41-4-12, which provides for waiver of immunity not only for the particular enumerated torts, but also for "deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties." She cites two criminal statutes as the basis for her claims for stalking and harassment, arguing that she has suffered "deprivation of a right secured by a law (*i.e.*, statute) of New Mexico," and this deprivation is actionable under the catch-all provision.

The New Mexico Supreme Court holds that "Section 41-4-12 of the Tort Claims Act waives immunity when injury has resulted from a deprivation of any right secured by the statutory law of . . . New Mexico." California First Bank v. New Mexico, 111 N.M. 64, 73 801 P.2d 646, 655 (1990). The court applies a two-prong test to determine whether a statute "secures a right" within the meaning of the statute: (1) whether the legislation creates a right on the part of specific

9

individuals; and (2) whether the legislative remedy explicitly or implicitly forecloses enforcement by private individuals through resort to § 41-4-12. Id., 111 N.M. at 74.

NMSA 1978 § 30-3A-3 defines "stalking" as a crime, declares it to be a misdemeanor (and, for repeat offenses, a felony), and provides that in addition to the specified punishment, a person convicted of stalking shall participate in a program of professional counseling at his own expense. NMSA 1978 § 30-3A-2 defines "harassment" as a crime and declares it to be a misdemeanor. There is nothing in these criminal statutes to indicate that they were intended to provide the basis for a private right of action. In addition, the New Mexico legislature chose to include in § 41-4-12 certain other violations of the criminal law, including assault, battery, and false imprisonment, in its list of enumerated actions for which law enforcement officers' immunity is waived. Stalking and harassment could have been, but were not, included in this list, and the Court finds this persuasive of a legislative intent that police immunity is not waived for such actions. "Although we strictly construe the provisions of the Tort Claims Act, our primary purpose remains to determine the Legislature's intent . . . To this end, we look first to the language used and we read the Act as a whole to give effect to its parts." California First Bank v. New Mexico, *supra*, 111 N.M. at 68.

In addition, the New Mexico courts have been wary of expanding the causes of action under the Tort Claims Act for torts not explicitly set forth in the statute, thus allowing the exceptions to swallow the rule of immunity. Blea v. City of Espanola, 117 N.M. 217, 870 P.2d 755 (Ct. App. 1994); Caullouette v. Hercules, Inc., 113 N.M. 492, 497, 827 P.2d 1306, 1311 (Ct. App. 1992) ("If we were to base a waiver of immunity on these provisions, the exceptions thus created would eliminate the principle of sovereign immunity"). If the New Mexico Tort Claims Act is to be expanded to include stalking and harassment as actions for which immunity of law enforcement

officer is waived, such expansion is best left to the state legislature.

## **Order**

IT IS THEREFORE ORDERED that Defendant Danny Valdez's Motion for Partial Summary Judgment No. I [Doc. 49] is denied as moot insofar as it seeks dismissal of Plaintiff's claims under the Eighth, Ninth and Tenth Amendments, Plaintiff having voluntarily withdrawn those claims;

IT IS FURTHER ORDERED that Defendant Danny Valdez's Motion for Partial Summary Judgment No. I [Doc. 49] is granted as to Plaintiff's state tort law claims, and those claims are hereby dismissed with prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge